CLS
10/22/21

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>    v.<br><br>Sergio SANCHEZ-Guerrero,<br><br>                  Defendant. | Case No.:  21MJ8863<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 21 U.S.C.§ 841(a)(1)<br>Possession of a Controlled Substance with Intent to Distribute |

The undersigned complainant being duly sworn states:

On or about October 21, 2021, within the Southern District of California, defendant, Sergio SANCHEZ-Guerrero, did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

1  The complainant states that this complaint is based on the attached Statement of
2 Facts incorporated herein by reference.

                                                _____
                                                Special Agent Evan Kinsel
                                                Drug Enforcement Administration

7  Sworn and attested to under oath by telephone, in accordance with Federal Rule of
8 Criminal Procedure 4.1, this 22nd of October, 2021.

                                                _____
                                                HON. RUTH BERMUDEZ MONTENEGRO
                                                U. S. MAGISTRATE JUDGE

1 | UNITED STATES OF AMERICA
2 | v.
3 | Sergio SANCHEZ-Guerrrero
4 |
5 | **STATEMENT OF FACTS**

I declare under penalty and perjury that the following statement is true and correct. This statement is based on the reports, documents, and notes furnished to Drug Enforcement Administration Special Agent (SA) Evan Kinsel.

On October 21, 2021, United States Border Patrol Agent (BPA) Luis Ramirez was assigned to the Highway 86 Border Patrol Checkpoint, located near Westmorland, California. At approximately 10:26 a.m., a Chevrolet pickup truck bearing a California license plate approached the primary inspection area. BPA Ramirez motioned the driver to stop at the primary inspection area. Once the driver stopped, BPA Ramirez identified himself as a BPA and questioned the driver as to his citizenship. The driver, later identified as Sergio SANCHEZ-Guerrrero (SANCHEZ), stated he was a resident and presented a valid Legal Permanent Resident card. BPA Ramirez then asked SANCHEZ where he was coming from and where he was going. SANCHEZ stated he was coming from Mexicali and traveling to Coachella, California.

As BPA Ramirez questioned the driver of the vehicle in primary inspection, BPA Luis Lozano's canine, a Human Narcotics Detection Dog (HNDD), conducted a non-intrusive canine sniff of the exterior of the vehicle. As the HNDD conducted the open air sniff of the vehicle, it immediately alerted to the presence of illegal drugs. BPA Lozano then asked BPA Ramirez to refer the vehicle to secondary inspection.

While in secondary inspection, BPA Lozano was advised by BPA Samuel Olivares that he sought and was granted consent by SANCHEZ to conduct a search of the vehicle. BPA Lozano approached SANCHEZ and identified himself as a United States Border Patrol Agent. BPA Lozano asked SANCHEZ once again if he could conduct a search of the vehicle as well as an x-ray scan of the vehicle utilizing the ZBF backscatter. SANCHEZ

consented and parked the vehicle next to the ZBF backscatter. SANCHEZ then exited the vehicle and waited in the secondary seating area. As BPA Lozano's HNDD conducted a second open air sniff in secondary inspection, the HNDD alerted to the rear of the vehicle. BPA Lozano opened the tailgate of the truck and allowed the HNDD to jump in. However, the HNDD did not locate the precise source of the detection.

Subsequently, BPAs Olivares and Lozano conducted an x-ray scan of the vehicle from different angles. After reviewing the x-ray scan of the vehicle, BPA Lozano noticed an anomaly on the bottom portion of the dresser that was in the bed of the truck.

BPA Lozano asked SANCHEZ who owned the furniture. SANCHEZ stated it belonged to his friend and he was delivering it to Coachella, California.

BPAs then conducted a search of the dresser and removed the bottom drawer. After removing the bottom drawer, BPA Lozano noticed an enclosed space on the bottom of the dresser. BPA Lozano drilled a hole on the bottom portion of the dresser exposing a white crystal-like substance. BPA Lozano then tested the white crystal-like substance utilizing a Thermo Scientific Gemini. The white crystal-like substance tested positive for methamphetamine.

BPA Tista proceeded to remove the bottom portion of the dresser by removing multiple screws and prying open the wood. Once the bottom portion of the dresser was removed, a total of 10 packages were discovered. All 10 packages contained a white crystal-like substance. Inside the checkpoint, one package was randomly selected and tested by BPA Lemus utilizing a Narcotics Test Kit (NIK). The white crystal-like substance tested positive for the characteristics and properties of methamphetamine.

In total, 74.05 pounds (33.600 kilograms) of methamphetamine was extracted from the dresser in 10 individual vacuum sealed packages. SANCHEZ was subsequently placed under arrest for violation of Title 21 USC 841, Possession of Controlled Substance.

At approximately 1:16 p.m., Agents from the Drug Enforcement Administration were contacted by United States Border Patrol (USBP) and subsequently responded to the USBP Highway 86 Checkpoint. At approximately 3:25 p.m., SANCHEZ was advised of

his Miranda Rights by Drug Enforcement Administration Special Agent Phillip D'Ribeaux in the Spanish language verbatim from a form DEA-13b. SANCHEZ stated he understood his rights and was willing to answer questions without the presence of an attorney.

SANCHEZ stated that approximately two months prior to this incident, he met a Hispanic male in Mexicali, Mexico, known to SANCHEZ only as "Victor," who hired him to move furniture from Mexicali to the Los Angeles, California area. SANCHEZ initially stated he had made three trips and that the Hispanic male paid him $400 USD per trip. SANCHEZ granted agents written permission on a form DEA-88 to search his cellular phone and agents discovered several text message threads containing destinations for furniture deliveries. SANCHEZ then revised his previous statement and claimed he had made approximately ten trips. SANCHEZ stated that each time he delivered furniture, he would meet persons who were unknown to him in shopping mall parking lots or at residences. These persons would then take possession of the furniture and he would return to Mexicali for payment. Agents reminded SANCHEZ he had previously been arrested at the USBP Highway 86 Checkpoint under similar circumstances. SANCHEZ denied any knowledge drugs were being transported in the furniture.